IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

RENA RICE
ALICE WILKS
RICARDO WILLIS                                                                PLAINTIFFS

V.                                                                    CASE NO. 3:08CV42

GORDON TRUCKING, INC.
JAMES KLIMECK                                                                 DEFENDANTS

## ORDER

This cause comes before the court on the motion in limine [43] of plaintiffs, Rena Rice, Alice Wilks, and Ricardo Willis, to exclude the expert testimony of John M. Bentley.

This case arises out of a traffic accident in which a Chevy Tahoe and an eighteen wheeler collided. The undisputed facts are that the Tahoe was traveling in the left lane of a divided highway and entered the median when the eighteen wheeler merged into the left lane. At the time the Tahoe entered the median, a passenger in the vehicle awoke, pulled on the steering wheel, and caused the Tahoe to reenter the roadway where it collided with the eighteen wheeler.

Defendants, Gordon Trucking, Inc. and James Klimek, offer Bentley as an expert on accident reconstruction. Bentley is a professional engineer. He has a Bachelor's Degree in both Industrial Technology and Mechanical Engineering. Since 1981 Bentley has been self-employed as an accident reconstructionist.

In reconstructing the instant accident Bentley relied on a police accident report, on-scene photographs, location and vehicle photographs, 2002 Tahoe vehicle data, the Life Care Plan of Alice Wilks, the report of Sammy R. Green, the Lane Change Maneuver Modeling for Accident

Reconstruction application, and the depositions of Rena Rice, Ricardo Willis, Alice Wilks, and James Klimek. Bentley made a number of conclusions from this information. The plaintiffs challenge both the entirety of Bentley's testimony and more specifically his calculation of the speed the Tahoe was traveling immediately before hitting the eighteen wheeler.

The Supreme Court has charged trial court judges with the responsibility of acting as gatekeepers in determining when expert testimony is admissible. *Daubert v. Merrell Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). *Daubert* requires that "when expert testimony is offered, the trial judge must perform a screening function to ensure that the expert's opinion is reliable and relevant to the facts at issue in the case." *Watkins v. Telesmith, Inc.*, 121 F.3d 984, 988-89 (5th Cir. 1997). Determining reliability requires assessing "whether the reasoning or methodology underlying the testimony is scientifically valid." *Daubert*, 509 U.S. at 592-93. Relevance rests on "whether [that] reasoning or methodology properly can be applied to the facts in issue." *Id*. at 593.

*Daubert* set forth a non-exclusive checklist for trial courts to use in determining the reliability of expert testimony. *Daubert*, 509 U.S. at 593. Those factors include: (1) whether the expert's technique or theory has been tested; (2) whether the technique or theory has been subjected to peer-review and publication; (3) the known or potential rate of error applicable to the technique or theory; (4) the existence of standards and controls applicable to the technique or theory; and, (5) whether the technique or theory is generally accepted in the scientific community. *Id*. at 593-95. In performing this analysis, a court must determine an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field" before finding the evidence admissible. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

Plaintiffs challenge Bentley's ability to testify on two grounds, that: (1) his failure to personally inspect the two vehicles and crash scene render his opinion unreliable; and, (2) Bentley's reliance on property damage to determine the speed of the Tahoe prior to the crash is unreliable.

As discussed above Bentley made his determinations based on several sources. He did not, however, visit the scene of the accident. Instead Bentley relied on photographs and notes taken by his assistant. The plaintiffs also complain that Bentley relied on a photogrammatric measurement taken by someone else and did not get all the available information from the Missouri Highway Patrol.[1]

In support of its contention these circumstances should preclude Bentley from testifying, plaintiffs rely on *Barthelemy v. Brown*. 2002 WL 34369280 (E.D. La. Jan. 14, 2002). In *Barthelemy*, the purported experts planned to testify in regards to the failure of a hitch assembly. *Id*. at *1. The plaintiffs failed to respond to the motion to exclude. *Id*. The facts as presented by the defendant showed that the experts did not exam "the assembly, the [vehicle in question], the trailer, the boat, or the physical scene of the accident." *Id*. Further, the experts did "not offer any scientific or technical calculations or other basis for . . . their conclusions." *Id*.

Both Bentley and the expert in *Barthelemy* relied on photographs taken after the accident. *See id*. at *1 n.2. However, the photographs Bentley relied on encompassed more than just the scene of the accident. Additionally, Bentley relied on other accounts of the accident. Bentley also gave a detailed report outlining the methods he used in coming to his conclusions.

Plaintiffs do not suggest the information Bentley relied on was incorrect. They are aware

---

[1] There is a dispute among the parties as to whether there was information generated by the Missouri Highway Patrol that Bentley did not consider. The court does not have to decide this issue in order to resolve the instant dispute.

of his assistant's role in obtaining this information and are certainly free to raise any issues this help may have created. There is no allegation Bentley came to his conclusions using an unreliable calculation. Plaintiffs have not shown that Bentley's reliance on information obtained by others renders his opinions unreliable. In fact other courts have specifically allowed expert opinions based on information obtained by others. *See, e.g. Peteet v. Dow Chemical Co.*, 868 F.2d 1428, 1432 (5th Cir. 1985) (allowing expert testimony which relied on data provided by the plaintiff) (citing *Gideon v. Johns-Manville Sales Corp.*, 761 F.2d 1129, 1135 (5th Cir. 1985)).

Plaintiff next contests Bentley's opinion on the speed of the Tahoe prior to the initial collision. Bentley opines that the Tahoe was traveling at approximately 50 miles per hour after its initial contact with the eighteen wheeler. Plaintiffs agree with this figure. However, they dispute his theory that the Tahoe slowed between ten and twenty-five miles per hour at the time of impact. Bentley adopted this figure based on the damage done to the Tahoe during the collision.

Bentley states the first thing he would normally use in determining collision speed would be crash tests. He admits "[t]here is not a particular crash test that is consistent with this kind of engagement and movement." The defendants state that Bentley refers to other similar crash tests in making his determination. He does mention other crash tests, but states they are inapplicable. Bentley states he did not refer to any testable data in coming to his conclusion.

Bentley's opinion on this matter is based solely on his own subjective view of the damage to the Tahoe. He can point to nothing in the literature showing this opinion is reasonable or reliable. Further he is unable to articulate exactly how he came to his conclusion. When asked if his conclusion was just a guess, Bentley stated, '[t]he high and low range, yes, sir. I tried to get the low what I would expect and above that what I would expect."

This method does not meet any of the five factors laid out by the *Daubert* court. It is not repeatable nor does Bentley state it is accepted in making such determinations. There is a peer-reviewed method for determining speed, but Bentley was unable to use this method as no crash test data existed. Further the court is unable to ascertain the error rate for this subjective methodology. As such this conclusion is inadmissible.

The court will allow Bentley to testify as to his conclusions. However, the court will exclude any testimony from Bentley regarding the speed of the Tahoe before the initial collision.

The defendants' motion is GRANTED IN PART and DENIED IN PART.

This the 16th day of July, 2009.

                                                **/s/ MICHAEL P. MILLS**
                                                **CHIEF JUDGE**
                                                **UNITED STATES DISTRICT COURT**
                                                **NORTHERN DISTRICT OF MISSISSIPPI**